# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

TOMMY SMITH, JR.,

        **Plaintiff,**

    **-vs-**                                       **Case No. 04-C-114**

MOISES GOMEZ, MICHAEL GROGAN,
JON SELL, DAWN DAVENPORT,
IRVING SUESSKIND, ANDREW RIEDMAIER,
and WILLIAM LUNDSTROM,

        **Defendants.**

---

# DECISION AND ORDER

---

        The plaintiff, Tommy Smith, Jr., lodged this *pro se* civil rights claim pursuant to 42 U.S.C. § 1983. On April 25, 2005, he was permitted to proceed on claims under the Fourth and Fourteenth Amendments as well as a § 1983 conspiracy count. Currently pending are a motion for summary judgment filed by defendants Moises Gomez, Michael Grogan, Jon Sell and the Milwaukee Police Department, and a motion to dismiss filed by defendants Dawn Davenport, Irving Suesskind, Andrew Riedmaier and William Lundstrom.[1] Both applications will be addressed herein.

---

[1] The defendants' December 21, 2005, motion for summary judgment states that it was filed on behalf of defendants Gomez, Sell and the Milwaukee Police Department. (*See* Doc. # 72). However, the defendants' January 20, 2006, reply brief in support of their motion for summary judgment also raises arguments concerning defendant Grogan. (*See* Doc. #84). Thus, the court construes the defendants' motion for summary judgment as one filed on behalf of defendants Gomez, Sell, Grogan and the Milwaukee Police   Department.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On December 21, 2005, defendants Moises Gomez, Jon Sell, Michael Grogan and the Milwaukee Police Department filed a motion for summary judgment. They assert that summary judgment should be granted for the following reasons: (1) this court lacks jurisdiction over defendants Grogan and Sell; (2) the Milwaukee Police Department cannot be sued because it is a subdivision of the City of Milwaukee; (2) defendant Gomez lawfully arrested the plaintiff; and (3) Gomez is entitled to qualified immunity. (D.s' Mot. for Summary Judgment at 2).

## I. FACTUAL BACKGROUND

On July 14, 2004, defendants Milwaukee Police Department and Moises Gomez filed a motion for summary judgment. By order of July 31, 2004, the defendants' motion for summary judgment was denied as moot and this action was dismissed as being barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Thereafter, on August 13, 2004, the plaintiff filed a Rule 60(b) motion for relief from judgment and a notice of appeal with the Court of Appeals for the Seventh Circuit.

On October 26, 2004, this court indicated that it would be inclined to grant the plaintiff's Rule 60(b) motion if the case were remanded. The case was subsequently remanded and the plaintiff's Rule 60(b) motion was granted on April 25, 2005. Also on that date, the plaintiff was permitted to proceed on a § 1983 conspiracy count as well as his Fourth and Fourteenth Amendment claims.

On December 21, 2005, the defendants filed a renewed motion for summary judgment, incorporating by reference the arguments presented in their July 14, 2004, motion for

2

summary judgment. On December 22, 2005, the court ordered the plaintiff to respond to the defendants' motion on or before January 20, 2006. The plaintiff's response was filed on January 11, 2006, and the defendants filed a reply brief in support of their motion for summary judgment on January 20, 2006. Accordingly, the defendants' motion for summary judgment is fully briefed and ready for disposition.

**A.     Standard of Review**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**B.    Preliminary Matters**

The defendants assert that this court lacks jurisdiction over defendants Michael Grogan and Jon Sell because they have not been properly served. (D.s' Mot. for Summary Judgment at 10). Further, they contend that the time limit for service of the amended complaint has passed. (D.s' Reply Brief in Support of Mot. for Summary Judgment at 1). Fed.R.Civ.P. 4(m) provides in pertinent part:

4

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effectuated within a specified time...

In this case, the amended complaint was filed on April 25, 2005. (*See* Doc. #48). A review of the docket in this case reveals that defendant Grogan was timely served with a copy of the amended complaint on June 21, 2005. (*See* Doc. #58). Grogan has given no indication as to why this service is deficient.[2]

With respect to defendant Sell, Attorney Susan E. Lappen filed a notice of appearance on his behalf on October 14, 2005, indicating that Sell had been "served with a summons and amended complaint." (*See* Doc. #68). Based on the foregoing, neither defendant Grogan nor defendant Sell has demonstrated that they were not served in a timely or otherwise appropriate fashion. Therefore, the defendants' motion for summary judgment based on lack of jurisdiction over defendants Grogan and Sell will be denied.

An initial comment is also necessary with respect to the Milwaukee Police Department's status as a defendant in this action. The court notes that the defendants' December 21, 2005, motion for summary judgment was filed on behalf of the Milwaukee Police Department in addition to defendants Gomez, Grogan and Sell. However, the Milwaukee Police Department was terminated as a defendant on April 25, 2005. Accordingly, the court shall disregard any arguments concerning the Milwaukee Police Department.

---

[2]The court notes that in the defendants' July 14, 2004, motion for summary judgment, Grogan asserted that he found a copy of the summons and complaint in his mailbox at work. *Id.* However, as noted in this court's order of December 22, 2005, a summons was later executed by Emily Hardimann on behalf of Grogan on June 21, 2005. (*See* Doc. #58).

5

**C.      Relevant Undisputed Facts[3]**

The plaintiff is currently incarcerated at Columbia Correctional Institution.  (*See* Pl.'s Letter of July 25, 2006).  However, the plaintiff was on parole at all times relevant to the instant action.  (*See*, *generally,* Complaint [Compl.]).   Defendants Moises Gomez, Michael Grogan and Jon Sell were employed by the City of Milwaukee Police Department as police detectives when the alleged wrongdoing occurred.  (Affidavit of Moises Gomez [Gomez Aff.] ¶5; Compl. at 2).

On February 24, 1999, the plaintiff was arrested for being a felon in possession of a firearm and attempted armed robbery. (Compl. at 7; Gomez Aff. ¶¶27-28). The arrest stemmed from a February 13, 1999, incident in which a 9 millimeter black Lorcin model L handgun with the serial number "L117911" was recovered at the scene of an unsuccessful armed robbery.  (Gomez Aff. ¶¶6-7).   *Id.*    A search of the serial number of the handgun revealed that it was registered to the plaintiff's cousin, Sharon D. Lewis.  (Gomez Aff. ¶13).

On February 17, 1999, defendant Gomez contacted Lewis.  (Gomez Aff. ¶12). Lewis initially told Gomez that she owned the handgun and that it had been stolen.  (Pl.'s Exh. A at 1).  However, after Gomez advised her that she should be truthful and cooperative if she wanted to avoid going to jail, Lewis said that the plaintiff had told her to buy the gun for him because he could not due to his status as a convicted felon.  (Pl.'s Exh. A at 1-2).  Lewis stated that on February 8, 1999, the plaintiff accompanied her to the gun store to order a gun and that

---

[3]The facts in this section are derived from the plaintiff's sworn amended complaint and exhibits to the extent they are undisputed as well as the defendants' exhibits and affidavits to the extent they are undisputed.

Case 2:04-cv-00114-RTR   Filed 09/29/06   Page 6 of 27   Document 88

he returned with her to pick it up on February 10, 1999. (Pl.'s Exh. A at 2). Lewis also indicated that she paid for the gun and the plaintiff later reimbursed her. *Id.*

After buying the gun, the plaintiff told Lewis to hide the gun under a ceiling tile in her bedroom, which she did. (Pl.s' Exh. A at 2). On February 12, 1999, the plaintiff took the gun from Lewis' home. *Id.* Lewis was not home at the time but she stated that she knew the plaintiff had taken the gun because no one else knew where it was kept. *Id.*

Lewis then stated that on February 14, 1999, an individual known as "Mike G" told her that the gun she had purchased for the plaintiff had been lost during a car robbery. *Id.* Mike G stated that he and the plaintiff tried to rob a "white male from Chicago." *Id.* Lewis did not remember whether Mike G or the plaintiff held the gun during the attempted robbery. *Id.* Lewis also informed Gomez that the plaintiff and Mike G were members of the Gangster Disciples gang. *Id.*

Based on the information collected from Lewis, defendant Gomez determined that the plaintiff should be arrested for being a felon in possession of a firearm and attempted armed robbery. (Gomez Aff. ¶30). The plaintiff was subsequently arrested on February 24, 1999. (Gomez Aff. ¶28). However, Gomez did not personally participate in the plaintiff's arrest. (Gomez Aff. ¶29). On May 7, 1999, the plaintiff's parole was revoked and he was sentenced to one year and nine months imprisonment. (Pl.'s Exh. A at 7-9).

7

**C.      Analysis**

**1.      Defendant Gomez**

The plaintiff submits that his arrest was unconstitutional because Gomez did not obtain a warrant prior to arresting the plaintiff. (Compl. at 7). In addition, the plaintiff asserts that defendant Gomez did not have probable cause to arrest him because Gomez had never met Sharon Lewis and could not personally attest to her reliability. (Compl. at 11). For his part, Gomez maintains that his investigatory work revealed that there was probable cause to arrest the plaintiff. (D.s' Mot. for Summary Judgment at 12). Further, Gomez contends that summary judgment should be granted in his favor because he enjoys qualified immunity from suit. *Id.*[4]

The defense of qualified immunity shields police officers from § 1983 liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(internal citations omitted). In determining whether qualified immunity applies, the Court of Appeals for the Seventh Circuit has instructed district courts to consider: (1) whether the plaintiff has asserted a violation of a federal constitutional right; and (2) whether the constitutional standards implicated were clearly established at the time in question. *Eversole*

---

[4]The court notes that defendant Gomez also argues that he should be dismissed because he did not personally arrest the plaintiff. Rather, Gomez conducted an investigation and determined that the plaintiff should be arrested for being a felon in possession of a firearm and attempted armed robbery. The court construes Gomez' claim as an argument that he should be dismissed for lack of personal involvement. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000)(in order to be responsible for a §1983 violation, an individual must have caused or personally participated in the alleged constitutional deprivation). Based on the facts in this case, Gomez cannot be dismissed for lack of personal involvement because he has not demonstrated that he did not cause the plaintiff to be arrested. Thus, the court will decide whether Gomez had probable cause to arrest or order the arrest of the plaintiff.

*v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995).  Although qualified immunity is a defense to a §

1983 suit, the burden of meeting the elements of this test rests with the plaintiff.  *Id*.

The constitutional right to be free from arrest without probable cause was, without

question, "clearly established" prior to the plaintiff's arrest in 1999.  *See, e.g., Beck v. Ohio*, 379

U.S. 89, 91 (1964).  Accordingly, the court in *Speigel v. Cortese* held:

> Because qualified immunity protects 'all but the plainly
> incompetent or those who knowingly violate the law,' a law
> enforcement officer will be immune to claims based on an arrest
> without probable cause unless 'it is obvious that no reasonably
> competent officer' would have believed that there was probable
> cause to arrest.  Thus, qualified immunity applies not only to those
> officials who correctly determine that probable cause to arrest
> exists, but also to those governmental officials who reasonably but
> mistakenly conclude that it does.  In this context, the law tolerates
> reasonable error because 'officials should not err always on the
> side of caution because they fear being sued.'

196 F.3d 717, 723 (7th Cir. 1999).  The pressing question, then, is whether a reasonable officer

could have believed that the plaintiff's arrest was lawful, in light of the clearly established right

to be free from arrest without probable cause.  *Tangwall v. Stuckey*, 135 F.3d 510, 518 (7th Cir.

1998).

Probable cause to arrest exists when, at the time of the arrest, the facts and

circumstances within the officers' knowledge, and of which they had reasonably trustworthy

information, were sufficient to warrant a prudent person to believe that an offense was

committed.  *United States v. Sawyer,* 224 F.3d 675, 678-79 (7th Cir. 2002).  Courts evaluate

probable cause not from the perspective of an omniscient observer but on the facts as they

would have appeared to a reasonable person in the position of the arresting officer.  *Mahoney*

*v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). The standard for determining probable cause is less stringent in the context of a qualified immunity defense than it the context of a suppression hearing. *Simkunas v. Tardi*, 930 F.2d 1287 (7th Cir. 1991).

Viewing all the evidence in the light most favorable to the plaintiff, as must be done at summary judgment, the court finds that reasonable police officers could have believed that probable cause existed to arrest the plaintiff. In particular, Gomez' investigation established the following as grounds for probable cause: (1) the recovered gun matched the serial number of the gun owned by Lewis; (2) Lewis is the plaintiff's cousin; (3) Lewis indicated that the plaintiff paid for the gun; (4) the plaintiff took the gun from Lewis' home on February 12, 1999; and (5) Mike G told Lewis that the gun had been lost during an attempted armed robbery during the early morning hours of February 12, 1999.

The plaintiff avers that his constitutional rights were violated because he was arrested without a warrant. (Compl. at 11). However, it is well settled that an officer may arrest a suspect without a warrant when the officer has probable cause to believe that the suspect has committed a crime and the suspect is not inside his or her home. *Sawyer*, 224 F.3d at 678. As discussed, Gomez had probable cause to arrest the plaintiff based on the information he obtained from Lewis. Further, there is no indication that the arresting officers had to enter the plaintiff's home in order to execute his arrest.

The plaintiff further alleges that defendant Gomez should not have believed Lewis' statements because Gomez had never met Lewis before contacting her on February 17, 1999. (Compl. at 11). In support of his proposition, the plaintiff relies on *Furlong v. Waukesha*

10

*County*, 177 N.W.2d 333 (Wis. 1970). In *Furlong*, the court held that a police detective who sought to obtain a *search warrant* could not show that he had probable cause to secure the warrant because he could not attest to the reliability of his informant, with whom he had no previous dealings. *Furlong*, 177 N.W. 2d at 338 (emphasis added).

The present case is distinguishable from *Furlong* because defendant Gomez was not seeking to obtain a search warrant based on an informant's statement. Further, the court is not aware of any requirement that an officer have met a witness as a prerequisite to finding that person's statement credible. Rather, in this circuit an officer has probable cause to place an alleged culprit under arrest when an officer has received information from some reasonably credible person that someone has committed a crime. *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). Here, Lewis informed Gomez that the plaintiff had owned and possessed a firearm in violation of his parole and that he had attempted an armed robbery. Gomez found that Lewis' statements were credible and sufficient to establish probable cause. Once he determined that there was probable cause, Gomez had no further constitutional obligation to conduct any further investigation. *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir. 1989).

Finally, the plaintiff asserts that defendant Gomez should not have found Lewis' statement to be credible because her story of the events was inconsistent. (Compl. at 11). Notably, the plaintiff has submitted no legal authority in support of his contention. Nevertheless, the Seventh Circuit has stated that a victim or eyewitness' report does not have to be "unfailingly consistent to provide probable cause." *Spiegel*, 196 F.3d at 725. Indeed, a

11

police officer need only conduct further investigation where information from or about a victim or eyewitness "would lead a reasonable officer to be suspicious." *Id.* (citing *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994)).

In the present case, it is undisputed that Lewis' initial statement that she owned the gun was inconsistent with her later statements that the plaintiff owned the gun and was involved in an attempted armed robbery. However, there is no indication that the information Lewis subsequently provided was unreliable or otherwise not credible. Moreover, it is unclear how Lewis' one inconsistent statement should have caused Gomez to become so suspicious that it was necessary to conduct additional investigation. Based on the foregoing, the court finds that defendant Gomez is immune to the plaintiff's claims.

### 2. Defendant Sell

Defendant Sell asserts that he was not involved with the decision to arrest the plaintiff. (D.'s Mot. for Summary Judgment at 2). However, a review of the complaint reveals that the crux of the plaintiff's claim against Sell is that he contacted defendant Davenport to request that a hold be placed on the plaintiff's probation. (Compl. at 12). Sell has not addressed this claim. Further, he has not offered any admissible evidence showing that he is entitled to summary judgment and the arguments concerning him were raised for the first time in the defendants' reply brief in support of their motion for summary judgment, thereby depriving the plaintiff of an opportunity to respond to these contentions. Thus, the defendants' motion for summary judgment is denied with respect to defendant Sell.

12

### 3.    Defendant Grogan

Defendant Grogan alleges that he was not involved with the probable cause decision and is not a proper defendant.   (D.'s Mot. for Summary Judgment at 2).  Grogan has provided no legal authority or admissible evidence (such as an affidavit) in support of his proposition.  At summary judgment, neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248.   Therefore, the defendants' motion for summary judgment with respect to defendant Grogan will be denied.

In sum, the defendants' motion for summary judgment is granted with respect to the plaintiff's claims against defendant Gomez.  However, defendants Sell and Grogan have failed to meet their burden of showing that they are entitled to summary judgment.  Thus, the plaintiff's claims against Sell and Grogan survive.  The court will now address the motion to dismiss filed by the remaining defendants.

### DEFENDANTS' MOTION TO DISMISS

On December 8, 2005, defendants Davenport, Suesskind, Riedmaier and Lundstrom filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  As grounds for their motion, the defendants assert: (1) this case should be dismissed under the doctrine of claim preclusion; (2) the defendants enjoy absolute immunity from suit; (3) the defendants enjoy qualified immunity from suit; (4) the plaintiff has failed to state a conspiracy claim; and (5) the plaintiff has failed to state a due process or equal protection claim; and (6) the plaintiff cannot pursue a § 1983 action based on a *respondeat superior* theory of liability.

13

## A. Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of its claims that would entitle him to relief. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). The facts alleged in the complaint are assumed to be true, and all facts, and all reasonable inferences flowing from those facts, are read in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990).

The fact that more than one legal theory might fit the allegations of a complaint is immaterial, as long as those allegations give notice of a legally sufficient claim under federal law. *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999). Facts alleged in a brief in opposition to a motion to dismiss as well as factual allegations contained in other court filings of a pro se plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint. *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997).

14

## B.    Preliminary Matters

The defendants seek to introduce court documents from prior state and federal proceedings.[5] Fed.R.Civ.P. 12(b)(6) provides in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

---

[5]The defendants' exhibits are summarized as follows:

| | |
|---|---|
| **Exh. A:** | Certified copies of the May 7, 1999, Division of Hearings and Appeals decision revoking the plaintiff's parole. |
| **Exh. B:** | February 2, 2004, Affidavit of Dawn Davenport. |
| **Exh. B(1):** | May 19, 1992, Judgment of Conviction in *State of Wisconsin v. Tommy Smith, Jr.*, Case No. 91-CF-913794A (Milwaukee County Cir. Ct. July 25, 2000). |
| **Exh. B(2):** | January 19, 2006, Judgment of Conviction in *State of Wisconsin v. Tommy Smith, Jr.*, Case No. 95-CM-001086 (Milwaukee County Cir. Ct. Sept. 7, 1999). |
| **Exh. B(3):** | December 1, 1998, copy of Probation/Parole Rules. |
| **Exh. C:** | Attorney Christy M. Hall's May 14, 1999, administrative appeal letter. |
| **Exh. D:** | June 4, 1999, Division of Hearings and Appeals decision sustaining the May 7, 1999, revocation of the plaintiff's parole. |
| **Exh. E:** | October 29, 1999, Petition for Writ of Certiorari in *Smith v. Schwarz*, Case No. 99-CV-008781 (Milwaukee County Cir. Ct. Mar. 27, 2000). |
| **Exh. F:** | November 8, 1999, dismissal of the plaintiff's Petition for Writ of Certiorari in *Smith v. Schwarz*, Case No. 99-CV-008781. |
| **Exh. G:** | December 28, 1999, Petition for Writ of Habeas Corpus in *Smith v. Kingston*, Case No. 99-CV-010387 (Milwaukee County Cir. Ct. Mar. 27, 2000). |
| **Exh. H:** | April 27, 2000, decision dismissing the plaintiff's Petition for Writ of Habeas Corpus in *Smith v. Kingston*, Case No. 99-CV-010387. |
| **Exh. I:** | August 25, 2000, complaint in *Smith v. Schwarz*, Case No. 00-C-1186 (E.D. Wis. Dec. 13, 2001) (unpublished opinion). |
| **Exh. J:** | December 13, 2001, decision granting the defendants' motion to dismiss *Smith v. Schwarz*, Case No. 00-C-1186. |
| **Exh. K:** | March 25, 2002, notice of appeal of Case No. 00-C-1186 to the Court of Appeals for the Seventh Circuit. |
| **Exh. L:** | September 18, 2002, decision of the *Smith v. Schwarz*, Case No. 02-1028 (7th Cir. 2002)(unpublished opinion) affirming the dismissal of Case Number 00-C-1186. |
| **Exh. M:** | April 30, 2002, complaint in *Smith v. Gomez, et al.*, Case No. 03-CV-003998. (Milwaukee County Cir. Ct. Sept. 17, 2003). |
| **Exh. N:** | September 22, 2003, decision dismissing *Smith v. Gomez*, Case No. 03-CV-003998. |

(D.s' Mot. to Dismiss Exhs. A-N).

15

Despite the express language of Fed.R.Civ.P. 12(6), the Seventh Circuit has held that "the district court may also take judicial notice of matters of public record" without converting a 12(b)(6) motion into a motion for summary judgment. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also* 5A Wright & Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record...also may be taken into account."). Accordingly, it has become common practice to take judicial notice of a court's records. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* at 201(03) to 201(35)-(40) (1992).

In the present case, the defendants' exhibits A through N are documents from *Smith v. Gomez*, Case No. 03-CV-01801 (Milwaukee County Cir. Ct. Mar. 1, 2004). Exhibit O is a copy of 42 U.S.C. § 1986 and several other documents that the plaintiff submitted with the amended complaint. The plaintiff has not been permitted to proceed on a claim under § 1986 and admission of the other documents would be redundant. Therefore the information contained in the defendants' Exhibit O will be disregarded. However, the defendants' exhibits A through N are properly considered without converting the defendants' motion to dismiss into one for summary judgment.

## C.   Factual Background[6]

The plaintiff is currently incarcerated at Columbia Correctional Institution. (*See* Pl.'s Letter of July 25, 2006). Defendant Dawn Davenport is a parole agent employed by the Division of Community Corrections (DCC). (Compl. at 2-3). Defendant Irving Suesskind is

---

[6]The facts in this section are derived from the April 25, 2005, amended complaint as well as the defendants' exhibits.

a supervisor at the DCC. *Id.* at 3. Defendant Andrew Riedmaier is an administrative law judge (ALJ) employed by the Division of Hearings and Appeals (DHA). *Id.* at 3. Defendant William Lundstrom is an assistant administrator with the DHA. *Id.*

As noted, the plaintiff was arrested on February 24, 1999, for being a felon in possession of a firearm and attempted armed robbery. (Compl. at 7). At the time he was arrested, the plaintiff was on parole. (Affidavit of Dawn Davenport [Davenport Aff.] ¶10). The terms and conditions of the plaintiff's parole were set forth in the "Probation/Parole Rules" form. (Davenport ¶12; D.s' Exh. B(3)). One of the provisions of the plaintiff's probation was that he was not permitted to "purchase, possess, own or carry any firearm or weapon" without approval from his agent. (D.s' Exh. B(3) ¶12).

Defendant Davenport was the plaintiff's parole agent. (Davenport Aff. ¶13). As a parole agent, Davenport's duties including supervising persons on parole and probation. (Davenport Aff. ¶2). In addition, she provides investigative services to the courts, the Department of Corrections and the Parole Commission to aid in sentencing, institutional programming and parole planning. *Id.*

On February 10, 1999, Davenport met with the plaintiff regarding the firearm possession and his parole status. (Davenport Aff. ¶15). Then, on March 2, 1999, she recommended that the plaintiff's parole be revoked. (Davenport Aff. ¶16). Thereafter, defendant Irving Suesskind approved Davenport's recommendation to revoke the plaintiff's parole. *Id.*

**Administrative Proceedings**

On May 7, 1999, the plaintiff appeared at a revocation hearing presided over by defendant Riedmaier. (D.'s Exh. A at 3). Riedmaier ordered that the plaintiff's parole be revoked and ordered the plaintiff to serve one year and nine months imprisonment. (D.s' Exh. A at 5).

On April 17, 2001, the plaintiff filed an administrative appeal of Riedmaier's May 7, 1999, order revoking the plaintiff's parole. (D.s' Exh. C). As grounds for his appeal, the plaintiff asserted that: (1) Riedmaier ignored evidence that Lewis twice failed to comply with subpoenas requiring her attendance at hearings; (2) Lewis gave inconsistent statements despite the fact that she was personally involved in the incident; (3) Riedmaier mis-characterized the plaintiff's sister's testimony; (4) the plaintiff was forthcoming in admitting that he went to Badger Guns; and (5) Davenport testified that the plaintiff was doing well on parole. *Id.*

On June 4, 1999, defendant William Lundstrom sustained Riedmaier's decision to revoke the plaintiff's parole. (D.s' Exh. D). Lundstrom found that Lewis' statements were credible because they were contrary to her penal interests. *Id.* Further, Lundstrom found that Lewis' statements demonstrated by a preponderance of the evidence that the plaintiff possessed a firearm in violation of his parole. *Id.*

**Judicial Proceedings**

On October 28, 1999, the plaintiff filed suit against David H. Schwarz, the administrator of the DHA, in *Smith v. Schwarz*, Case. No. 99-CV-008781, in Milwaukee County Circuit Court. (D.'s Exh. E). Schwarz, who is not a named defendant, denied the plaintiff's

18

appeal of defendant Lundstrom's June 4, 1999, decision. (D.'s Exh. E. at 10). For relief, the plaintiff requested that the court review the decision of the DCC and void the decision of defendant Schwarz. *Id.* On November 8, 1999, the plaintiff's writ of certiorari was dismissed as untimely. (D.s' Exh. F).

Then, on August 25, 2000, the plaintiff filed suit against David H. Schwarz as the administrator of the DHA in *Smith v. Schwarz*, 00-C-1186 (E.D. Wis.). (D.'s Exh. I). The plaintiff alleged that Schwarz had violated various provisions of the state and federal constitutions because he was responsible for the conduct of defendants Riedmaier and Lundstrom. *Id.* On December 13, 2001, United States Magistrate Judge William E. Callahan dismissed the plaintiff's case on grounds that Schwarz was entitled to absolute immunity. (D.s' Exh. J). Then, on September 13, 2002, the Court of Appeals for the Seventh Circuit affirmed the decision of the district court. (D.s' Exh. L).

Thereafter, on April 30, 2003, the plaintiff filed suit against defendants Gomez, Grogan, Sell, Davenport, Suesskind, Riedmaier, Lundstrom, the Milwaukee Police Department, the DCC, and the DHA in Milwaukee County Circuit Court. (D.s' Exh. M). As pertains to defendant Davenport, Suesskind, Riedmaier and Lundstrom, he alleged the following: (1) defendant Davenport recommended that the plaintiff's parole be revoked; (2) defendant Suesskind approved Davenport's recommendation to revoke the plaintiff's parole; (3) defendant Riedmaier ignored testimony by the plaintiff's attorney; and (4) defendant Lundstrom approved Riedmaier's decision. *Id.* On September 17, 2003, the case was dismissed for failure to serve all defendants. (D.'s Exh. N; Compl. at ).

**D.    Analysis**

The plaintiff alleges that the defendants violated his constitutional rights in the following ways: (1) defendant Davenport "sought and received authorization from Irving Suesskind to place a parole hold on the plaintiff" and caused him to be re-incarcerated; (2) defendant Suesskind gave Davenport the authority to place a parole hold on the plaintiff and caused the plaintiff to be reincarcerated; (3) defendant Riedmaier ignored testimony and unlawfully revoked the plaintiff's parole; and (4) defendant Lundstrom ignored testimony and affirmed the revocation of the plaintiff's parole revocation. (Compl. at 9-10).

In response, the defendants submit that: (1) this claim should be dismissed under the doctrine of claim preclusion; (2) the plaintiff has failed to state a § 1983 conspiracy claim against defendants Davenport, Suesskind, Riedmaier and Lundstrom; (3) the plaintiff has failed to state a claim for denial of due process or equal protection; (4) defendants Davenport, Suesskind, Riedmaier and Lundstrom enjoy absolute immunity; (5) defendants Davenport, Suesskind, Riedmaier and Lundstrom enjoy qualified immunity; and (6) § 1983 does not support a claim based on a respondeat superior theory of liability.[7]

**1.    Claim Preclusion[8]**

The defendants assert that this case should be dismissed under the doctrine of claim preclusion. Claim preclusion refers to the "preclusive effect of a judgment foreclosing

---

[7]The court notes that the defendants also claim that the DOC, DOA, DHA and DCC should be dismissed because they are not proper defendants and the plaintiff cannot proceed under § 1986. However, in this court's order of April 25, 2005, the DHA and the DCC were dismissed as defendants and the court held that the plaintiff had not stated a conspiracy claim under § 1986. The DOA and the DOC were never named as defendants in the instant action.

[8]As used in this opinion, the term "res judicata" is synonymous with the concept of "claim preclusion." *See LaSalle Nat'l Bank of Chicago v. County of Du Page*, 856 F.2d 925, 930 n.2 (7th Cir. 1988).

Case 2:04-cv-00114-RTR    Filed 09/29/06    Page 20 of 27    Document 88

litigation of matters that were or could have been litigated in an earlier suit." *LaSalle Nat'l Bank of Chicago*, 586 F.2d at 930. Claim preclusion is an affirmative defense that may be raised pursuant to Fed.R.Civ.P. 8(c).[9]

### Prior Federal Court Proceedings

The defendants assert that this action is barred by Judge Callahan's December 13, 2001, decision in *Smith v. Schwarz*, Case No. 00-C-1186 (E.D. Wis. Dec. 13, 2000). Because the plaintiff brought the earlier case in federal court, the federal rules of claim preclusion apply. *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1998)(citing *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987)). For the doctrine to apply, three elements must exist: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *In re Energy Coop.,* 814 F.2d at 1230. In addition, claim preclusion bars not only the issues that were actually litigated but also bars any issues which could have been raised in the prior lawsuit. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364.

In the present case, David H. Schwarz is not a named defendant. Moreover, the complaint names ten additional defendants. Thus, there is not an exact identity of parties. *See In re Energy Coop.,* 814 F.2d at 1230.

However, the defendants assert that they are in privity with Schwarz because Schwarz and the new defendants are all state employees. The Court of Appeals for the Seventh Circuit has held that "privity is an elusive concept." *In re matter of L & S Industries*, 989 F.2d 929, 932-33 (7th Cir. 1993). Privity is typically found when the interests of a previously named

---

[9]The defendants properly raised a claim preclusion defense in their respective answers. (*See* Docs. # 56, 61, 62 and 63).

party are closely aligned with those of the party invoking the doctrine. *People Who Care v. Rockford Bd. of Ed.*, 68 F.3d 172, 177 (7th Cir. 1995). In this circuit, for purposes of claim preclusion, a government and its officers are in privity. *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002).

In support of their proposition that they are in privity with Schwarz, the defendants cite cases such as *Froebel v. Meyer*, 217 F.3d 928, 933 (7th Cir. 2000) and *Lindas v. Cady*, 499 N.W.2d 692 (Wis. 1994). The court notes that both *Froebel* and *Lindas* concern issues of state law as opposed to federal law. The defendants' privity argument is further deficient because the plaintiff has never sued the state prior to lodging this action. Specifically, neither the DCC nor the DHA (as governmental agencies) were named in *Smith v. Schwarz*. Thus, the defendants cannot show that there has been a judgment rendered against a party (i.e., the state) who is in privity with the state employee defendants in this case. Accordingly, the defendants have not met their burden of showing that this action is barred by the prior judgment entered in *Smith v. Schwarz,* Case No. 00-1186.

### Prior State Court Proceedings

The defendants seem to assert that the present case is also barred by two prior state proceedings, *Smith v. Schwarz*, No. 03-CV-9978 (Milwaukee County Cir. Ct. Nov. 8, 1999) and *Smith v. Schwarz*, No. 99-CV-871 (Milwaukee County Cir. Ct. Sept. 17, 2003). Under 28 U.S.C. § 1738, federal courts must give the judgments of state courts the same full faith and credit that those judgments would receive in the rendering state's courts, as long as the state judgment satisfied constitutional due process requirements. *Froebel,* 217 F.3d at 933.

22

In other words, since the underlying judgments are from state court cases, state law as to claim preclusion is applied. *See id.*

Similar to the federal standard, Wisconsin law provides that three factors must be present in order to preclude a later action: (1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits. *Froebel*, 217 F.3d at 933. The earlier judgment is conclusive as to all matters which were litigated or which might have been litigated in that proceeding. *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846-47 (7th Cir. 2003). The burden of proving claim preclusion is upon the party asserting its applicability. *Alexopolous v. Dakouras*, 179 N.W.2d 836 (Wis. 1970).

The defendants face the same challenge demonstrating claim preclusion in relation to the state court proceedings as they did with respect to the federal court proceedings. Specifically, only David H. Schwarz was named as a defendant in the two prior state court cases. In both cases, neither the DHA and the DCC (as governmental entities) were named and therefore there can be no privity with the state defendants in the case at bar. Based on the foregoing, the defendants have not met their burden of showing that the two prior state court proceedings bar this case under the doctrine of claim preclusion.

## 2. Absolute Immunity

The defendants assert that this case should be dismissed because they enjoy absolute immunity from suit. The plaintiff has not refuted this contention. The Supreme Court has held that district courts should address the merits of a defendant's immunity defense as soon

23

as possible. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991)("one of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."). In determining whether a government official is entitled to absolute immunity, the Court of Appeals for the Seventh Circuit applies a "functional approach." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996). Under a functional approach, both a judge performing "truly judicial acts" as well as officials preforming "functionally comparable" acts in other contexts are accorded absolute immunity. *Wilson*, 86 F.3d at 1443 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)); *Butz v. Economou*, 438 U.S. 478, 512 (1978)). Parole board members are absolutely immune from suit for their decision to grant, deny or revoke parole. *Walrath v. United States*, 35 F.3d 277, 281 (1994). In addition, activities that are "inexorably connected with the execution of parole revocation procedures and are analogous to judicial action" invoke absolute immunity. *Id*. at 282.

### Defendant Davenport

The plaintiff avers that defendant Davenport "sought and received" authorization to place a parole hold on the plaintiff and caused the plaintiff to be "unlawfully reincarcerated." (Compl. at 9). It is undisputed that Davenport was assigned to be the plaintiff's parole agent on January 26, 1999. As a parole agent, Davenport's duties including supervising persons on parole and probation. In addition, she provides investigative services to the courts, the Department of Corrections and the Parole Commission to aid in sentencing, institutional programming and parole planning. On February 10, 1999, Davenport met with the plaintiff

24

regarding the firearm possession and his parole status. Then, on March 2, 1999, Davenport recommended that the plaintiff's parole be revoked.

The defendants assert that the nature of Davenport's activities entitle her to absolute immunity. In support of their contention, they rely on *Walrath*, 35 F.3d at 282, in which the Court of Appeals for the Seventh Circuit held that a case analyst employed by the United State Parole Commission was entitled to absolute immunity in a suit alleging that the analyst issued an arrest warrant for a parole revocation without probable cause. In finding that the analyst was entitled to absolute immunity, the court noted that the issuing of an arrest warrant for a parole violation has many judicial characteristics. *Id.* Specifically, the analyst had to make a discretionary decision that probable cause existed to believe that a parole violation occurred. *Id.* Further, in reaching such a conclusion, the analyst had to apply legal standards to the evidence gathered by other government officials. *Id.*

Similarly, in this case defendant Davenport's decision to revoke the plaintiff's parole evinced judicial characteristics. In particular, her recommendation to revoke the plaintiff's parole was judicial in nature. *See Powell v. Irving*, 684 F.2d 494, 497 (7th Cir. 1982) (in deciding to grant, deny or revoke parole, parole board officials act in a quasi-judicial capacity and are entitled to absolute immunity). Further, Davenport had to make a discretionary decision that a parole violation had occurred. *See Walrath*, 35 F.3d at 282. Based on the foregoing, defendant Davenport is entitled to absolute immunity and the claims against her will be dismissed.

25

**Defendant Riedmaier**

The plaintiff alleges that defendant Riedmaier ignored testimony that defendant Davenport was acted in conspiracy with defendants Sell and Grogan and he unlawfully revoked the plaintiff's parole. (Compl. at 10). "There can be little doubt that the role of the modern federal hearing examiner or administrative law judge... is 'functionally comparable' to that of a judge." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (internal citations omitted). Further, as an ALJ, defendant Riedmaier was performing a quasi-judicial function when he decided to revoke the plaintiff's parole. *See Butz,* 438 U.S. at 512. Thus, defendant Riedmaier is entitled to absolute immunity and the claims against him shall be dismissed.

**Defendant Lundstrom**

The plaintiff avers that defendant Lundstrom also ignored testimony that defendant Davenport was acting in conspiracy with defendant Sell and Grogan and that he unlawfully affirmed the revocation of the plaintiff's parole. (Compl. at 15). It is unclear whether Lundstrom is employed as an ALJ. However, the record indicates that he had the same quasi-judicial responsibilities as defendant Riedmaier. Specifically, Lundstrom reviewed the findings of ALJ Riedmaier, he found that Lewis' statements were credible because they were contrary to her penal interests, and he found that Lewis' statements demonstrated by a preponderance of the evidence that the plaintiff possessed a firearm in violation of his parole. Based on this, it is clear that Lundstrom's role was "functionally comparable" to that of a judge. *See Cleavinger,* 474 U.S. at 200. Thus, he is entitled to qualified immunity and the claims against him will be dismissed.

26

**Defendant Suesskind**

The plaintiff submits that defendant Suesskind authorized defendant Davenport to place a parole hold on the plaintiff which caused the plaintiff to be unlawfully incarcerated. (Compl. at 9). It is undisputed that the plaintiff's sole allegation against Suesskind is that he approved Davenport's recommendation to revoke the plaintiff's parole. However, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create a cause of action based on collective or vicarious responsibility. *Id*. For this reason, the plaintiff's claim against Suesskind must be dismissed.

**IT IS THEREFORE ORDERED** that the motion for summary judgment filed by defendants Gomez, Sell, Grogan and the Milwaukee Police Department (Doc. # 72) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendants Davenport, Suesskind, Riedmaier and Lundstrom (Doc. # 69) is **granted.**

Dated at Milwaukee, Wisconsin, this 29th day of September, 2006.

**SO ORDERED,**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**